## J. M. WARNOCK *v.* JOHN C. LORAN, ET AL.

**Contracts—Illegal Consideration.**

A contract made by a county clerk to furnish copies of naturalization papers to voters, to be paid for by a candidate for office to secure votes is contrary to public policy and void. The influence originating from the execution of such contracts should not be allowed to operate on the elector casting his vote, or the official who by law is designated as one of the instruments to confer upon him the right of suffrage.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

February 12, 1879.

OPINION BY JUDGE PRYOR:

It is not deemed necessary in this case to investigate the question as to the right of the clerk to charge a fee for furnishing to the applicant the evidence of his having been naturalized, and we will only suggest that to exact compensation in advance for the services rendered would, in many instances, make the exercise of the right of suffrage depend on the ability to pay. It appears from the testimony that the claim of the appellee originated by reason of services rendered in giving copies of naturalization papers to various persons, during the contest for the office of mayor in Louisville between Jacobs and Baxter. The friends of Jacobs, as appellees show, learned that Baxter's friends had made an arrangement with him (the clerk) to give copies of such papers on Baxter's credit, and the appellant,

one of the supporters of Jacobs, desired to make a similar arrangement with the appellee in behalf of Jacobs.

The arrangement was concluded with the deputy clerk by which the persons were to be naturalized on the order of the appellant, and such as received the evidences of their right to vote, or citizenship, on such an order, the fees were to be paid by Jacobs or his friends. A copy of one of the many orders constituting the basis of appellee's recovery is as follows:

"LOUISVILLE, KY., December 4, 1875.

ED. KAISER, ESQ.:

Issue papers to bearer.                    J. M. WARNOCK."

The appellee, or his deputy, in the execution of this contract made with the appellant, gave what he calls copies of naturalization papers to 232 persons, and copies of a mere declaration of intention to become citizens to as many more. The account for naturalization (complete) is $464, and for the mere declaration of intention, $302.50, making in all $766.50. These copies were not records that had been made prior to the contract between the appellant and the appellee's deputy, but were the evidences of citizenship, and the intention to become citizens, made on the order of the appellant, and for the sole purpose of advancing the interests of one of the candidates at the time canvassing for the office of mayor.

It is further shown that the office of the clerk was so crowded by the applicants asking for the evidences of their right to vote, that a branch office was created at another part of the city, and copies of these records issued with as much facility as if emanating from the principal office. How the clerk or his deputy could exercise this power does not appear; it is to be inferred that the papers were issued and the records afterward made.

It is insisted by counsel for the appellant that such a contract is contrary to public policy and void, and in this position we fully concur. While the naturalized citizen is entitled to the full enjoyment of his right to vote, and should be protected in its exercise, it is evident that such a contract as is relied on in this case is destructive of the purity of elections, and calculated to induce the elector to vote in a particular way, by reason of the agreement to furnish him at the expense of the candidate, or his friends, the evidence of his right to vote, and the clerk ready by reason of his contract to furnish the necessary papers on the production of a written order from a respon-

sible party, the friend of one of the candidates, that he should be paid for the services rendered.

A deputy clerk was permitted to do much of this work, at an office in the city remote from judge or clerk, and it is manifest that the entry of record was made after the naturalization papers had been delivered. Although the papers issued by the deputy may not be included in the present account, and may have contributed to advance the interest of some other candidate, it evidences the evil tendency of all such contracts, and the necessity of pronouncing them null and void. The influences that must originate from the execution of such contracts, should not be allowed to operate on the elector casting his vote, or the official who by law is designated as one of the instruments to confer upon him the right of suffrage. No promise of fee or reward should be made an inducement for those in power to aid the candidate, where friends are willing to make liberal contributions for that purpose, nor should the influence of wealth or place interfere with the humblest citizen, whether native born or naturalized, in the exercise of this great privilege, "the value of which depends upon the independence, moderation, discretion and purity with which it is exercised."—Kent.

The judgment below is *reversed* and cause remanded with directions to dismiss the petition.

*Edwards & Seymour, for appellant.*
*Laf Joseph, T. L. Bennett, for appellees.*